IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

IN RE: Manomay, LLC      Bankruptcy Court No. 19-24450-CMB

   Debtor,         Chapter 11

Trek Development Group, Inc.,    The Honorable Carlota M. Böhm

   Movant,

   vs.

Manomay, LLC,

   Respondent.

## MOTION TO DISMISS BANKRUPTCY PURSUANT TO 11 U.S.C. § 1112(b)(2) OR, IN THE ALTERNATIVE, TO APPOINT TRUSTEE

  AND NOW, comes Trek Development Group, Inc., by and through its attorneys, Voelker & Associates, P.C., and moves the Court for dismissal of the within bankruptcy action for cause, and avers the following in support thereof:

1.  This is an action arising pursuant to a case under Title 11, United States Code.

2.  On November 14, 2019, the Debtor filed a voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code at the above number and term.

3.  The mailing address of the Debtor is 130 Seventh Street, Pittsburgh, PA 15222 (the "Premises").

4.  Trek Development Group, Inc. (hereinafter referred to as "Movant") is a corporation and is

duly authorized to conduct business in the Commonwealth of Pennsylvania.

5.     Movant is a party-in-interest under the provisions of the Bankruptcy Code as it is a creditor of the Debtor.

6.     11 U.S.C. §1112(b) governs the dismissal of a Chapter 11 proceeding and provides that the Court may convert a case under Chapter 11 to a case under Chapter 7 or "may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . ."

7.     Bankruptcy Code section 1112(b)(4), 11 U.S.C. §1112(b)(4), provides a non-exhaustive list of factors which demonstrate cause exists to dismiss a filing including, in part:

a.     substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation:

b.     gross mismanagement of the estate;

c.     failure to comply with an order of court;

d.     unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

e.     failure to attend the meeting of creditors convened under section 341(a) or an examination offered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

f.     failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);

g.     failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of court; and

h.     inability to effectuate substantial consummation of a confirmed plan.

8.     Additionally, the Third Circuit has determined that Chapter 11 bankruptcy filings may be dismissed for "cause" under §1112(b) when they are not filed in good faith. See In re SGL

Carbon Corp., 200 F.3d 154 (3d Cir. 1999).

9.      As explained more fully herein, the Debtor's Bankruptcy should be dismissed under 11

U.S.C. § 1112 for cause including Debtor's bad faith.

### Background

10.     Debtor Manomay, LLC ("Debtor") was organized as a limited liability company in the

Commonwealth of Pennsylvania on or about October 28, 2016.

11.     Debtor's primary place of business is located at 130 Seventh Street, Pittsburgh, PA  15222

(the "Premises").

12.     Debtor occupies the Premises pursuant to a Lease as tenant with the Movant as landlord

which the Debtor maintains is in continued effect but which was actually terminated pre-

bankruptcy as set forth more fully herein.  The Lease history is set forth below:

13.     On or about September 7, 2011, Nilesh Mehta (not a party to this action) entered into a Lease

as tenant with the Movant as landlord for the Premises (hereinafter the "Lease").  (A true and

correct copy of the Lease is attached hereto as Exhibit A).

14.     Subsequently, Mr. Mehta assigned the Lease to the Debtor.

15.     On the Premises, Debtor operates a restaurant (Stuff'd) and bar (Seven).

16.     As a substantial part of its operations, Debtor sells alcoholic beverages from both the

restaurant and bar.

17.     In pertinent part, the Lease and Assignment Agreement contain a Confession of Judgment clause.

18.     Movant confessed judgments against Debtor in 2018 for breaches of the Lease (Allegheny County Nos. GD-18-001767 and 18-011769), which resulted in the negotiation and execution of an Agreement to Forbear Execution which also contained a confession of judgment clause.

19.     The Debtor breached the Agreement to Forbear Execution, by failing to pay rent and comply with the other terms of the Lease, which caused Movant to confess judgment once again against the Debtor in the Court of Common Pleas of Allegheny County on February 4, 2019 at Docket Nos. GD-19-001792 (for ejectment) and GD-19-001793 (for money damages).

20.     The Judgment by Confession in GD-19-001792 operated as a judicial declaration of final termination of the Debtor's possessory interest in the subject property.

21.     In connection with Docket Nos. 19-001792 and 19-001793, Debtor filed Petitions to Strike and/or Open the confessions of judgment for ejectment and rent, respectively.

22.     Following a period of discovery and argument on the Debtor's Petitions to Strike and/or Open Judgment, the Debtor's Petitions were denied by Orders of Court dated November 12, 2019.

23.     By said Orders of Court, the Court of Common Pleas confirmed the validity and enforceability of the judgments entered against Debtor by confession on February 4, 2019.

24.     Two days after the Court of Common Pleas Court's Orders, on November 14, 2019 the

Debtor filed its Petition for Bankruptcy in the instant action. (Document no. 1).

25.  After filing this Bankruptcy, Debtor filed appeals to the Superior Court on November 15, 2019, which were docketed at Nos. 1693 WDA 2019 and 1694 WDA 2019, in connection with the above confessed judgments and Orders of Court refusing to open and/or strike said judgments.

26.  Debtor did not seek a stay or supersedeas, nor post a bond in the Commonwealth Court proceedings.

27.  Thereafter, upon issuance of a briefing schedule by the Superior Court of Pennsylvania in January 2020, the Debtor then filed a suggestion of bankruptcy with the Superior Court on January 14, 2020, which resulted in a stay of proceedings in the Superior Court on January 30, 2020.

28.  On December 12, 2019, Debtor filed its Declaration for Non-Individual Debtors in the within proceedings. (Document no. 16).

29.  In the Declaration, Debtor identifies $585,500.00 in assets which includes $400,000 in restaurant and bar equipment and liabilities of only $101,826.38.

30.  Debtor additionally identifies gross revenues for the then current fiscal year and the preceding fiscal year in excess of $800,000.00.

31.  Further, in the Declaration Regarding Balance Sheet, Cash Flow Statement, Employee Income Record, Statement of Operations and Tax Operations appended to the Declaration,

Gino Riccelli affirmed that he was the sole owner of Debtor pursuant to a Court Order entered September 17, 2019, by the Honorable Philip A. Ignelzi in the Court of Common Pleas of Allegheny County at Docket No. GD-19-000973.  (Document no. 16).

### Bad Faith

32.   The Third Circuit has determined that Chapter 11 bankruptcy filings may be dismissed for "cause" under §1112(b) when they are not filed in good faith.  See, In re SGL Carbon Corp., 200 F.3d 154, 160 (3d Cir. 1999).

33.   "Good faith imports an honest intention on the part of the petitioner to effect a reorganization, together with a need for and possibility of effecting it . . ."  In re Business Finance Corp., 451 F.2d 829, 834 (3d Cir.1971).

34.   The focus is "'on two inquiries that are particularly relevant to the question of good faith: (1) whether the petition serves a valid bankruptcy purpose" and (2) whether the petition is filed merely to obtain a tactical litigation advantage.'" In re 15375 Memorial Corp. v. Bepco, L.P., 589 F.3d 605, 618 (3d Cir. 2009) [citations omitted];  see also, In re SGL Carbon Corp. at 165.

35.   The burden is on the bankruptcy petitioner to establish good faith.  Id.

36.   Debtor did not act in good faith in filing these bankruptcy proceedings as: (I) the Debtor has no assets (as set forth more fully herein) nor an enforceable interest in the Lease necessary to continue its operations; (II) the Debtor is not in substantial financial distress having only a few unsecured creditors whose claims are relatively small; (III) the Debtor's purported

Lease was terminated pre-bankruptcy and is subject to eviction proceedings as a result of arrearages on its debt; (IV) Debtor's financial problems essentially involve a dispute between debtor and its landlord which can be resolved in the pending state court action; and (V) the timing of the Debtor's filing evidences intent to delay or frustrate legitimate efforts of Debtor's landlord to enforce its rights; (VI) there was no pressure from non-moving creditors; (VII) the Debtor filed solely to create the automatic stay; (VIII) the Debtor will be unable to successfully reorganize due to liquor law violations. See generally, In re 9281 Shore Road Owners Corp., 187 B.R. 837 (E.D.N.Y. 1995); In re SB Properties, Inc., 185 B.R. 198, 205 (E.D. Pa. 1995).

37.    Based upon the Debtor's schedules as filed, the Movant believes that Debtor is paying its debts reasonably as they become due and is not suffering from substantial financial distress such that the within bankruptcy was filed without a legitimate and valid reorganization and/or rehabilitation purpose under Chapter 11.

38.    Instead, as set forth more fully herein, the Movant believes the Debtor has filed this Bankruptcy to avoid a legitimate state court judgment entered pre-bankruptcy in connection with a two-party dispute, and is using these proceedings primarily or exclusively as a collateral attack on the state court judgment to frustrate the claims of its landlord, the Movant. See, In re SB Properties, Inc., 185 B.R. 198, 206 (E.D. Pa. 1995) (quoting In re Heritage Wood 'N Lakes Estates, Inc., 73 B.R. 511, 514 (Bankr. M.D. Fla. 1987) wherein the Court found bad faith where the debtor "determined that it was not going to get the best side of the coin in the state court and looked to go elsewhere to have a new bite at the apple.").

## **Improper Litigation Tactics**

39.    The Debtor's business operations rely upon continued occupation of the Premises pursuant to the Lease which the Debtor maintains is in continued effect but which was actually terminated pre-bankruptcy.

40.    As set forth above, Movant confessed judgment against the Debtor in the Court of Common Pleas of Allegheny County on February 4, 2019.

41.    Debtor's Petitions to Strike and/or Open the Judgment were denied by Orders of Court dated November 12, 2019.

42.    Two days after the Court's Orders, on November 14, 2019 the Debtor filed its Petition for Bankruptcy in the instant action.

43.    After filing this Bankruptcy, Debtor filed appeals to the Superior Court on November 15, 2019 of the Orders of Court refusing to open and/or strike the confessed judgments.

44.    Debtor did not seek a stay or supersedeas in the state court matters pursuant to Pennsylvania Rules of Appellate Procedure §§ 1731-1751.  See also, 210 Pa. Code §1732 et seq.

45.    However, upon Debtor's receipt of a briefing schedule from the Superior Court of Pennsylvania in January 2020, the Debtor filed a suggestion of bankruptcy with the Superior Court on January 14, 2020, which resulted in a stay of proceedings in the Superior Court on January 30, 2020.

46.    Movant believes that the Debtor's actions are deliberately designed to avoid prosecuting its

own appeals with the Superior Court which it filed and that instead Debtor is solely pursuing

this Bankruptcy in an effort to obtain relief from the Court of Common Pleas decision.

47.    As stated herein, there is no legitimate basis for Chapter 11 reorganization under the

circumstances of this case and there is no reason why the Superior Court cannot resolve the

two-party dispute which generated this bankruptcy filing.

48.    Accordingly, the Debtor's failure to obtain a supersedeas under state law and resolve this

matter in the Superior Court, and instead proceed with this bankruptcy constitutes bad faith.

Cf. Argus Group 1700, Inc. v. Steinman, 206 B.R. 757 (E.D. Pa.1997) (Chapter 11 petition

to avoid posting of supersedeas bond on appeal from state court judgment was filed in bad

faith, where debtor would not be insolvent but for state court judgment, and debtor's counsel

admitted that its Chapter 11 case would be dismissed if debtor was successful on appeal).

49.    Moreover, to the extent Debtor did file the within bankruptcy proceedings to avail itself of

the automatic stay, such intent "cannot convert a bad faith filing to a good faith one." See,

In re 15375 Memorial Corp., supra at 620.

50.    As the Debtor's bankruptcy filings were made in bad faith, these bankruptcy proceedings

should be dismissed.

### Collateral Attack on State Court Judgment

51.    The Movant further believes and avers that the Debtor has filed this bankruptcy for the sole

purpose of nullifying the effect of the Court of Common Pleas' decision which would

dispossess Debtor of the premises, and to use the Bankruptcy Court to maintain possession

of the premises by circumventing a Superior Court Appeal. Such use of the Bankruptcy

Court constitutes a misuse of Chapter 11 proceedings and demonstrates bad faith in these

proceedings.

52.     The Movant believes and avers that the Debtor has filed this bankruptcy solely in an attempt

to forum shop its resolution of a two-party dispute between the Debtor and Movant given that

Debtor filed this bankruptcy two days after losing its petitions to open and/or strike

judgments and that Debtor did not pursue a supersedeas in connection with filing its appeals

to the Superior Court of Pennsylvania but rather through the automatic stay of bankruptcy

proceedings. See, In re SB Properties, Inc., 185 B.R. 198, 206 (E.D. Pa. 1995) (rebuking the

debtor's "improper attempt to downright forum shop"); In re Business Information Company,

81 B.R. 382 (W.D. Pa. 1988); In re Karum Group, Inc., 66 B.R. 436 (W.D.Wash. 1986).

53.     The Movant believes and avers that the Debtor's filing of this bankruptcy amounts to little

more than a litigation tactic to use the Bankruptcy Court to interfere with state court claims

and proceedings which is improper and in bad faith. See, In re SGL Carbon Corp., 200 F.3d

154, 165 (3d Cir.1999) (citing cases); In re Cedar Shore Resort, Inc. 235 F.3d 275 (8th Cir.

2000) ("Congress designed Chapter 11 to give those businesses "teetering on the verge of a

fatal financial plummet an opportunity to reorganize on solid ground and try again, not to

give profitable enterprises an opportunity to evade contractual or other liability."); In re

Cohoes Industrial Terminal, Inc. 931 F.2d 222 (2nd Cir. 1991) ("[B]ecause bankruptcy filings

must be made in good faith, an entity may not file a petition for reorganization which is

solely designed to attack a judgment collaterally—the debtor must have some intention of

reorganizing. Although a debtor need not be in extremis in order to file such a petition, it

must, at least, face such financial difficulty that, if it did not file at that time, it could

anticipate the need to file in the future.") (citations omitted); Dunes Hotel Associates v. Hyatt

Corp., 245 B.R. 492 (D.S.C. 2000).

54.    As the Debtor's bankruptcy filings were made in bad faith, these bankruptcy proceedings

should be dismissed.

### No Assets and Inability to Effectuate Reorganization

55.    Upon information and belief, contrary to the Declaration filed by Debtor (Document no. 16),

the Debtor has no assets other than a purported Lease with Movant (although the Lease was

terminated prepetition, as set forth more fully herein) and an expired liquor license (as set

forth more fully herein).

56.    Because the Debtor has no assets, this Chapter 11 Bankruptcy action was brought in bad faith

as it cannot be effectuated and, therefore, should be dismissed.

57.    As previously stated, Mr. Mehta, the original tenant of the Movant, assigned the Lease to the

Debtor, Manomay, LLC.  However, on or about November 19, 2016, prior to the assignment

of the Lease to Manomay, Mr. Mehta, his entity Seven on Seven, LLC (collectively

"Sellers") and the Riccelli Group, LLC, entered into an Asset Purchase Agreement.  (A true

and correct copy of the Asset Purchase Agreement is attached hereto as Exhibit B).

58.    Pursuant to the Asset Purchase Agreement, the above Sellers sold to the Riccelli Group,

LLC, essentially all of the assets of the restaurant and bar (excluding the liquor license and

disco ball).  This includes, but is not limited to, "**all inventory, equipment and supplies**

**necessary for operation of the Club and the Restaurant Businesses located on the premises (the 'Inventory') and all personal property, including but not limited to furniture, furnishings equipment, the build out and decor located at the Club and Restaurant Businesses**." (Emphasis added).

59.  As a result of the Asset Purchase Agreement, the Riccelli Group, LLC (<u>not the Debtor</u>), acquired all assets of the bar and restaurant.

60.  After the Asset Purchase Agreement was executed, Mr. Mehta assigned the Lease to the Debtor on or about December 14, 2016.

61.  Furthermore, on January 31, 2017, after the Lease was assigned to the Debtor and after the assets were sold to the Riccelli Group, LLC, the Debtor joined in the Asset Purchase Agreement as ***assignor*** <u>to the Riccelli Group, LLC</u>, which further demonstrates that the Riccelli Group, LLC is the owner of the assets of the bar/restaurant, not the Debtor.  (<u>A true and correct copy of Manomay's joinder agreement is attached hereto as Exhibit C</u>).

62.  At the time of the assignment of the lease to the Debtor, the Movant was entirely unaware of the Asset Purchase Agreement or any involvement of the Riccelli Group, LLC in the Debtor's business operations.  The Movant <u>did not consent</u> to such Asset Purchase Agreement.

63.  Thus, as all assets pertaining to the bar and restaurant which is operated by the Debtor belong to the Riccelli Group, LLC, pursuant to the Asset Purchase Agreement, the Debtor does not have assets which can be effectively reorganized in these proceedings.

64.   As set forth above, unless there is a valid reorganizational purpose, a Chapter 11 petition is not filed in good faith.  In re SGL Carbon Corp., supra at 165.

65.   Moreover, the "value of a debtor's assets is a significant factor in determining whether a  . . . petition was filed in 'good faith.'"  In re Business Finance Corp., supra at 835.

66.   As it appears that Debtor made material misstatements in its Declaration (Document no. 16) as to the assets of Debtor and Debtor does not have assets necessary to support a valid reorganizational purpose, this matter should be dismissed for cause.

## Liquor License Issues

67.   The Lease provides, inter alia that "[Debtor] will at all times comply with all requirements of . . . Pennsylvania Liquor Control Board and Commonwealth of Pennsylvania codes, regulations and requirements."

68.   To the extent the Lease remains in effect, Lessee is, and has been since the inception of the instant bankruptcy case, in violation of the Liquor Code as set forth more fully herein which constitutes a breach of the Lease.

69.   Debtor was aware that it was in violation of the Liquor Code, and therefore the Lease, at the filing of the within bankruptcy proceeding and, nevertheless, has attempted in bad faith to utilize the within action in order to continue its business operations and to forestall Movant's enforcement of its rights.

70.   This Court should dismiss this bankruptcy as the Debtor's business operations are in

violation of applicable state law and cannot lawfully result in a successful reorganization of the bankruptcy estate.  In the alternative, a Trustee should be appointed as set forth herein.

71.    The Debtor's business operations consist of a restaurant and bar which serve alcoholic beverages.

72.    Upon information and belief, the sale and service of alcoholic beverages comprises a significant portion of Debtor's revenue and is an essential component of Debtor's ability to successfully reorganize in these bankruptcy proceedings.

73.    The Debtor's ability to legally serve alcoholic beverages is subject to and regulated by the Pennsylvania Liquor Control Board ("PLCB") and the Pennsylvania Liquor Code.  See 47 P.S. §1-101, *et seq.*

74.    The Debtor purports to be the licensee of one (1) liquor license having License Number R-10390 (the "License") issued through the PLCB (A true and correct copy of the License information from the PLCB's website is attached hereto as Exhibit D).[1]

75.    As stated more fully herein, the Debtor's License status is in continuing violation of several aspects of the Liquor Code.

76.    The License expired as of May 31, 2019.  See, Exhibit D.

77.    The License as physically displayed on the wall of the Debtor's premises reflects that the

---

[1]    The Conditional License Agreement listed on the PLCB website (Exhibit D) dated September 9, 2016 is for a different LID number (27493) for Red's Ringside Café, Inc. which is unrelated to the Debtor.

License expired as of May 31, 2019.

78.    The Debtor does not conspicuously display any temporary operating authority from the

PLCB and is in current violation of 47 P.S. § 4-467 (pertaining to display of license

information).

79.    The License also reflects that Kanan Shah is the Manager (responsible party for PLCB

purposes) of Manomay, LLC and that Kanan Shah is the 100% owner of the Debtor which

is, upon information and belief, not accurate and further violates the Liquor Code.

80.    According to bankruptcy schedules filed in this matter and verified by Gino Riccelli as

Managing Member, the Debtor is now purportedly owned 100% by Mr. Riccelli who is not

listed on the License as a Manager or Owner.

81.    The License ownership information is expressly contradicted by the Debtor's representations

as to ownership of Manomay by Mr. Riccelli.

82.    The PLCB requires that any changes in ownership or licensed manager of a liquor license

must be reported to the PLCB within 15 days in compliance with the Pennsylvania Liquor

Code.  See generally 40 Pa. Code § 5.91; 5.23(c).

83.    Upon information and belief, Mr. Riccelli is not listed on the License with his ownership

information because of his felony criminal history which would disqualify his involvement

in liquor operations or lead to cancellation of the License.

84.    Mr. Riccelli's failure to submit accurate and timely ownership information concerning

himself to the PLCB is a violation of the Liquor Code.

85. Moreover, it appears that Debtor's representations in the filings in these bankruptcy proceedings are inaccurate.

86. Prior to the filing of these bankruptcy proceedings, Debtor and the Riccelli Group, LLC, as Plaintiffs, brought an action against Defendants Kanan Shah and Nilesh Mehta (Kanan's husband) at docket no. GD-19-00973 in the Court of Common Pleas of Allegheny County (hereinafter the "Shah Litigation").

87. In connection with the Shah Litigation, Plaintiffs Riccelli Group, LLC and Manomay, LLC filed a Complaint alleging that there was a sale by and between the Riccelli Group, LLC and Kanan Shah in which:

   a. "Defendant Shah assigned, transferred and sold all of her right, title and interest in and to Manomay, including specifically her membership interest therein, to Riccelli Group [LLC]."

   b. "As part of the sale, Plaintiffs purchased a liquor license from Defendants."

(A true and correct copy of the Complaint in the Shah Litigation is attached hereto as Exhibit E).

88. The Complaint was verified under oath by Gino Riccelli for Riccelli Group, LLC and Manomay, LLC, as Plaintiffs. See, Exhibit E.

89. Furthermore, the Debtor's representations (verified by Gino Riccelli) in the Shah Litigation that "Riccelli Group is currently the lawful owner of Manomay" also contradicts the License

information.

90.   Moreover, an Order of Court issued in the Shah Litigation dated September 17, 2019 directed

      that "Kanan Shah shall transfer all of her right, title and interest in the membership and

      ownership of Manomay, LLC to <u>Gino Anthony Maurizio</u> or his assigns . . ."  (Emphasis

      added).

91.   Moreover, a separate Order from Judge Ignelzi dated September 18, 2019 appears to have

      granted Kanan Shah "a secured interest in all of Manomay LLC's right, title and interest in,

      to, and under Manomay LLC's goods, equipment, furnishing, fixtures . . . . trade inventory,

      accounts receivable, general intangibles, contracts, and contract rights . . . . whether now

      owned or hereafter from time to time acquired by Manomay LLC . . . and all cash and/or

      non-cash proceeds of any of the foregoing."  Said secured interest appears not to be reflected

      in any of the Debtor's schedules.

92.   The Court of Common Pleas' Order directing the transfer of all Debtor's interests to Gino

      Anthony Maurizio contradicts the Declaration filed on December 12, 2019, in these

      proceedings (Document no. 16) that Gino Ricelli[2] is 100% owner of Debtor.

93.   In summary, in violation of the Pennsylvania liquor laws, the License shows apparently

      outdated and inaccurate information as to who owns the Debtor which is an ongoing

      violation of the Liquor Code, and upon information and belief neither Gino Riccelli, Riccelli

      Group, LLC nor Gino Anthony Maurizio appear to have been ever disclosed as owners of

---

[2]     The bankruptcy declaration on behalf of the Debtor is signed by "Gino Ricelli"
although upon information and belief, Mr. Riccelli's name is spelled with two c's as in the
addendum attached to said declaration.

the Debtor for liquor license purposes to the PLCB.

94.    Thus, in contravention of the Pennsylvania liquor laws, Debtor is not operating under a valid liquor license. See generally 47 P.S. § 4-467; 47 P.S. § 4-493.

95.    Without a valid liquor license, Debtor cannot successfully reorganize in these proceedings.

96.    As Debtor cannot successfully reorganize without a valid liquor license, these bankruptcy proceedings must be dismissed.

97.    Further, as Debtor knew that its liquor license was expired when it filed the within bankruptcy proceedings, Debtor's filing was not in good faith and the case must be dismissed.

98.    Additionally, Debtor's misstatements in its December 12, 2019 Declaration demonstrate its lack of good faith and, therefore, these proceedings must be dismissed.

## Post-Expiration License Status

99.    As stated, the Debtor's License expired as of May 31, 2019. However, upon information and belief, the Debtor was granted temporary authority to operate subject to terms, conditions and limitations set by the Liquor Control Board as set forth herein.

100.    Because the Debtor has not posted this temporary operating authority in violation of the Liquor Code, it is unknown to Movant exactly how long the Debtor's temporary operating authority extends from the PLCB.

101.    In approximately August or September, 2019, Debtor's License was held for a non-renewal hearing.

102.    Although the License was not renewed, as in the case with all non-renewal proceedings, the Debtor was permitted continued temporary operating authority pending a hearing before a PLCB hearing examiner.

103.    Upon information and belief, part of the reason for non-renewal was the PLCB's review of police reports evidencing a history of physical altercations at the Debtor's premises.  See 47 P.S. § 470.

104.    Upon information and belief, in connection with PLCB non-renewal proceedings, the Debtor failed to inform the PLCB of Mr. Riccelli's alleged ownership status of the Debtor and his role with respect to liquor operations of the Debtor.

105.    Movant believes and therefore avers that Debtor did not notify the PLCB in a continuing attempt to conceal Mr. Riccelli's involvement in liquor operations due to his felony criminal history.

106.    The failure of Debtor to inform the PLCB of the preceding facts and information would constitute grounds for revocation of the Debtor's license due to violations of the Pennsylvania Liquor Code which additionally constitutes a breach of the Lease.

107.    The Debtor had a non-renewal hearing before the PLCB on September 18, 2019.  Mr. Riccelli did not appear or testify at the hearing for the Debtor, which is an apparent attempt by Mr. Riccelli to conceal his involvement in liquor operations.

108.   At a November 13, 2019 PLCB Board meeting, the PLCB recommended renewing the

license only upon execution of a Conditional License Agreement ("CLA") to be executed

between the PLCB and the Debtor.

109.   Such a recommendation is made when the PLCB determines that a license should only be

renewed upon implementation of certain conditions.

110.   Although it appears that the PLCB submitted a draft CLA to the Debtor's liquor counsel,

upon information and belief the Debtor never executed a CLA as required by the PLCB.

111.   Consequently, it appears that any temporary authority under which the Debtor was operating

was either rescinded or will terminate unless a CLA is executed.

**Even if the License were Renewed, the Debtor's Lease has been Terminated and the Debtor
did not Surrender the License for Safekeeping**

112.   Even if the Debtor were to execute a CLA and the PLCB renewed the License subject to the

CLA, the License would immediately have to be placed in safekeeping by the Debtor under

Pennsylvania law.

113.   Movant confessed judgments against Debtor in 2018 for breaches of the Lease (Allegheny

County Nos. GD-18-001767 and 18-011769), which resulted in the negotiation and execution

of an Agreement to Forbear Execution.

114.   The Debtor breached the Agreement to Forbear Execution, failed to pay rent and comply

with the other terms of the Lease, which caused Movant to confess judgment once again

against the Debtor in the Court of Common Pleas of Allegheny County on February 4, 2019

at Docket Nos. GD-19-001792 (for ejectment) and GD-19-001793 (for money damages).

115.   The Judgments by Confession operated as a judicial declaration of final termination of the

Debtor's possessory interest in the subject property.

116.   In connection with Docket Nos. 19-001792 and 19-001793, Debtor filed Petitions to

Strike/Open the confessions of judgment for rent and ejectment, respectively.

117.   Following a period of discovery and argument on the Debtor's Petitions to Strike/Open

Judgment, the Debtor's Petitions were denied by Orders of Court dated November 12, 2019.

118.   By said Orders of Court, the Court of Common Pleas confirmed the validity and

enforceability of the judgments entered against Debtor by confession on February 4, 2019.

119.   Two days after the Court's Orders, on November 14, 2019 the Debtor filed its Petition for

Bankruptcy in the instant action.

120.   Because the Lease was terminated, the Debtor was unable to continue to operate liquor

operations at the premises under the Liquor Code without a Lease, and the Debtor was

obligated to forward the License for safekeeping with the PLCB.  See 40 Pa. Code § 7.31(b).

121.   If the License were to be placed in safekeeping, the Debtor would be barred from operating

for so long as the License is in safekeeping.  See, e.g., Pa. State Police, Bureau of Liquor

Control Enforcement v. D'Angio, Inc., 666 A.2d 1114, 1116 (1995) (Pa. Commw. Ct. 1995)

("[W]hen there is no license to post because it is in safekeeping, no right continues to exist

in [the] licensee to continue to operate a liquor establishment.") (citations omitted).

122.   Upon information and belief, the Debtor failed to notify the PLCB of the termination of the Lease in 2018 or 2019 when confessed judgments were filed and confirmed by the Court of Common Pleas, nor did the Debtor forward the License for safekeeping.

123.   Said actions of the Debtor render the Debtor's liquor activities unlawful on the subject premises without a possessory interest in the Lease.

124.   Thus, even if the License was renewed, the license must be forwarded to safekeeping due to a lack of a Lease, which would prevent liquor operations at the subject premises.

**Even if the License were Renewed, it Must be Placed in Safekeeping with the PLCB due to this Bankruptcy**

125.   As provided in 47 P.S. § 4-468(b.1), "In the event that any person to whom a license shall have been issued under the provisions of this article shall . . . become **bankrupt** by either voluntary or involuntary action, **the license of such person shall be immediately placed in safekeeping with the board for the balance of the term of the license and for an additional period of one year upon application to the board by the trustee, receiver, or assignee**." (Emphasis added).

126.   In violation of § 4-468(b.1), the Debtor has not submitted the License, which is still physically located on the Debtor's premises, to safekeeping as required by the statute.  See, 47 P.S. § 4-468(b.1).

127.   Moreover, the License could not be removed from safekeeping until the balance of the license term expires.  See 47 P.S. § 4-468(b.1).

128.   Therefore, to whatever extent the Debtor may still have rights under the License, the License must immediately be placed in safekeeping as a result of this bankruptcy which precludes the Debtor's from legally operating under Pennsylvania law.  See 47 P.S. § 4-468(b.1).

129.   Nevertheless, in contravention of the statute, the Debtor has not taken any actions with regard to the required safekeeping and continues to sell alcohol.

130.   It is impossible for the Debtor to successfully reorganize in the within Bankruptcy given that either the Debtor has an expired License or is operating under temporary authority from the PLCB pending execution of a CLA but subject to the requirement to place the License in safekeeping, either of which would require operations to cease.  Consequently, this bankruptcy should be dismissed.

131.   Moreover, Movant believes and therefore avers that Debtor was aware of the limitations upon the License when it filed the within bankruptcy.

132.   As Debtor knew that the License was either expired or subject to safekeeping when it filed the within bankruptcy proceedings, Debtor's filing without notifying the Court of the status of the License was not in good faith.  Thus, the case must be dismissed.

133.   Additionally, subsequent to the filing of the within bankruptcy proceedings, a large fight occurred on or about January 6, 2020 which started in the Debtor's premises and then emptied out into the streets at which point gunshots were fired.

134.   Movant believes that given the history of altercations at the Debtor's premises, this additional post-bankruptcy event may result in the revocation of Debtor's license as a

nuisance bar which would preclude Debtor from effectively reorganizing.  Movant also

believes this constitutes an ongoing safety concern about the Debtor's business operations.

See 47 P.S. § 6-611.

135.    In summary, upon information and belief the Debtor has violated the Pennsylvania Liquor

Code thereby breaching the Lease and jeopardizing the legality of Debtor to continue liquor

operations by its:

a.    Failure to submit accurate entity ownership information of the Debtor to the PLCB;

b.    Failure to post accurate and non-expired License information on the Debtor's
Premises;

c.    Failure to disclose Gino Riccelli's involvement in liquor operations or ownership
interest in the Debtor to the PLCB;

d.    Failure to disclose The Riccelli Group, LLC and/or Gino Anthony Maurizio's
possible ownership interest in the Debtor to the PLCB;

e.    Failure to properly renew the License and display temporary authority;

f.    Failure to place the License into safekeeping upon termination of the Lease as
required by the Liquor Code;

g.    Failure to place the License into safekeeping upon filing bankruptcy as required by
the Liquor Code;

h.    Misrepresentations and omissions before the PLCB in connection with some or all
of the foregoing.

136.    The said actions of the Debtor constitute bad faith such that this bankruptcy should be
dismissed.

137.    For all the foregoing reasons, cause exists to dismiss this bankruptcy under  11 U.S.C. §
1112(b) due to Debtor's bad faith in initiating the within proceedings and because Debtor's
actions have resulted in a continuing loss to or diminution of the estate and absence of a
reasonable likelihood of rehabilitation, an inability to perpetuate the business, and an
inability to effectuate a plan.

138.    Thus, Movant respectfully requests this Court to dismiss the within Bankruptcy.

**Prejudice from Delayed Creditors' Meeting and Grounds to Dismiss for Failure to Make
Debtor's Representative Available for Questioning**

139.    The 341(b) Creditors' Meeting was originally scheduled for January 22, 2020.  (Document
no. 24).

140.    After business hours on the eve of the Creditors' meeting on January 21, 2020, Debtor's
counsel informed Movant's counsel via email that "we will not be getting into the merits of
the meeting tomorrow. We will be simply entering our appearance and continuing the
meeting to February 19 at 11:00 am, as the debtor will likely have to amend its schedules
after going through the financial records not previously in current ownership's possession."

141.    At the Creditors' Meeting on January 22, 2020, the Debtor's counsel instructed the Debtor's

representative not to answer <u>any</u> questions under oath even though Movant offered to ask only questions not related to the bankruptcy schedules which were to be amended.

142.    At the Creditors' Meeting on January 22, 2020, Debtor represented that it would endeavor to file amended schedules at least seven days prior to the postponed Creditors' Meeting on February 19, 2020.

143.    Debtor did not file its amended schedules as agreed.

144.    On February 18, 2020, the day before the rescheduled Creditors' Meeting, Debtor's counsel notified Movant's counsel that yet another continuance had been requested from the Trustee's office.

145.    The Movant has been prejudiced in bringing this Motion to Dismiss and from the undue delay in these Bankruptcy proceedings by the Debtor's failure to timely answer questions at the 341(b) Creditors' Meeting and failure to timely file its amended schedules.

146.    Movant believes and therefore avers that the real motivation for postponing the Creditors' Meeting is part of a continuing pattern of delay to avoid having the Debtor's representative testify as to the facts and circumstances of the Debtor's business operations for as long as possible.  The Movant has raised real and substantial questions about the legality of the Debtor's liquor operations, the ownership interests of third parties in the Debtor, the ownership of the Debtor's assets, and the history of business transactions involving the Debtor, such that the Debtor's representative must provide an answer these questions under oath.

147.    Movant believes and therefore avers that there is no legitimate excuse for failing to obtain

the alleged required financial records and amend the Debtor's schedule within the time

period set forth by the Trustee's office.  Moreover, Debtor has failed to adequately explain

or demonstrate why such delay is necessary without having obtained the allegedly required

financial records.

148.    In light of the above, Movant respectfully requests pursuant to 11 U.S.C. §1112(b)(4)(F) that

this Honorable Court dismiss the instant case for Debtor's unexcused failure to timely file

its amended schedules and make the Debtor's representative available for questioning.

149.    Movant brings the within Motion to Dismiss solely based upon issues known to the Movant

at this time, Movant is not raising other grounds for a Motion to Dismiss which may exist

pending the completion of the 341(b) Creditors' Meeting.  The Movant expressly reserves

the right to seek dismissal of the within bankruptcy for additional reasons which will be

raised (if necessary) at a later time, including but not limited to, after the completion of the

341(b) Creditors' Meeting scheduled to occur on March 25, 2020.

WHEREFORE, Movant respectfully requests this Honorable Court to terminate the within

Bankruptcy Proceeding, for cause shown, and to assess attorneys fees and costs as permitted by the

Lease Section 21(c).

## **IN THE ALTERNATIVE, MOTION TO APPOINT TRUSTEE**

150.    In the alternative, Movant respectfully asks this Court to appoint a Trustee pursuant to 11

U.S.C. § 1104 to manage the Debtor's affairs for reasons including, but not limited to, to

Debtor's mishandling of issues related to proper and legal operation of Debtor's business, including but not limited to issues related to the liquor license and/or safekeeping of the license as required by Pennsylvania law.

151.    Pursuant to 11 U.S.C. § 1104, a Trustee shall be appointed for cause, including fraud, dishonesty, incompetence or gross mismanagement of the debtor's affairs whether before or after the commencement of the case or if such appointment is in the interests of creditors. See, 11 U.S.C. § 1104.

152.    Cause under § 1104(a)(1) exists for appointing a Trustee, because of Debtor's incompetence and gross mismanagement both before and after filing of bankruptcy related to the operation and handling of the business and liquor operations as set forth more fully herein including, but not limited to, the past and present altercations at the Debtor's premises which contributed to non-renewal proceedings and are potentially leading to revocation of the License as a nuisance bar, the expiration of the License, the failure to update License information with accurate ownership information, the failure to execute a CLA, the failure to post temporary License information as required by Pennsylvania law, the failure to submit the License to safekeeping as required by Pennsylvania law, and any other violations of the Liquor Code.

153.    Additionally, a Trustee should be appointed to compel the Debtor to surrender the License for safekeeping as provided in 47 P.S. § 4-468(b.1) and/or 40 Pa. Code § 7.31(b) and/or to effectuate a CLA as required by the PLCB.

154.    Such appointment is in the best interests of the creditors and other interests of the estate

pursuant to § 1104(a)(2).

WHEREFORE, Movant respectfully requests this Honorable Court to appoint a Trustee as stated herein, and to assess attorneys fees and costs as permitted by the Lease.

Respectfully submitted,

VOELKER & ASSOCIATES, P.C.


By: /s/ Edward F. Voelker, Jr.
Edward F. Voelker, Jr.
PA I.D. #55414
edward.voelker@voelkerlaw.com

VOELKER & ASSOCIATES, P.C.
3960 Route 8, Suite 200
Allison Park, PA 15101-3603
412-486-8800

Attorney for Movant, Trek Development Group, Inc.


Dated: 2/20/2020